IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TODAY MEDIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CBR MEDIA LLC, <br> a Pennsylvania LLC, <br><br> Defendant. | Civil Action No. 07-cv-00087 <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR
LACK OF JURISDICTION AND IMPROPER VENUE**

**INTRODUCTION**

On Friday afternoon, February 16, 2007, Plaintiff filed a Verified Complaint alleging unfair competition, trademark dilution, and common law trademark infringement with respect to Defendant's newly launched magazine entitled MAINLINE. Along with the Verified Complaint, Plaintiff also simultaneously filed a Motion for Temporary Restraining Order.

The Defendant, a Pennsylvania entity, publishes MAINLINE magazine in Pennsylvania. MAINLINE is named for and targeted at a specific geographic location in the western suburbs of Philadelphia, Pennsylvania known as the "main line." See Andrew Cantor Declaration ("Cantor Decl.," attached as Exhibit "A"). Defendant has no offices, employees, phone numbers, business entities, representatives, agents, advertisers, bank accounts, or even subscribers in Delaware.

Plaintiff has utterly failed to put forward any factual basis for venue or jurisdiction in this Court. Under the established two-part test, there are no facts to support specific or general jurisdiction over the Defendant under the Delaware long-arm statute, 10 *Del. C.* § 3104, and no facts to support jurisdiction under any constitutional due process analysis. Accordingly, Defendant's Motion to Dismiss should be granted.

## I.     FACTUAL BACKGROUND

Plaintiff Today Media, Inc. ("Today Media") is a Delaware corporation with its principal place of business at 3301 Lancaster Pike, Suite 5-C, Wilmington, Delaware, and the publisher of a magazine entitled MAIN LINE TODAY. (Ver. Compl., ¶¶ 2, 8.) Plaintiff currently has no federal trademark registration for MAIN LINE TODAY because their former registration was cancelled by the United States Patent and Trademark Office on April 17, 2004 for failure to make a required filing. (Ver. Compl., ¶ 10.)

Defendant CBR Media LLC ("CBR") is a Pennsylvania limited liability company, with its principal place of business at 143 Bala Avenue, Bala Cynwyd, Pennsylvania. (Cantor Decl., ¶ 2.) Since approximately December, 2006, CBR has been the publisher of a new magazine entitled MAINLINE. (Cantor Decl., ¶ 9.)

Andrew Cantor is one of the principals of CBR, and supplied the Declaration submitted herewith. (Cantor Decl.) CBR has no office or telephone number in Delaware; is not registered to do business in Delaware; has no representatives or agents in Delaware; owns no property in Delaware; has no bank accounts in Delaware; has no subscribers in Delaware; and has no advertisers in Delaware. (Cantor Decl., ¶¶ 13 - 18.)

As regards the scope of the magazine MAINLINE, the facts clearly show that Defendant launched MAINLINE magazine with "the intent to focus on and target the geographic market represented by the geographic community known as the "main line," located in the western main line suburbs of Philadelphia, Pennsylvania, and more particularly the northern main line suburbs." (Cantor Decl., ¶ 7.)

MAINLINE is published bi-monthly, accordingly the premiere January/February, 2007 issue was published in December, 2006, and the second issue, dated march/April, 2007, was distributed in February, 2007. (Cantor Decl., ¶ 9.)

For each of the two issues thus far, approximately 35,000 copies were printed, virtually all of which were distributed free of charge to the target market located geographically in the "main line" suburbs west of Philadelphia, Pennsylvania. (Cantor Decl., ¶ 10.) The means of distribution was mailing from Pennsylvania to addresses in Pennsylvania, and free of charge distribution to selected locations in the main line area in Pennsylvania. (*Id.*) In total, approximately 70,000 copies were distributed solely in Pennsylvania, to the target geographic market. (*Id.*)

At the request of a third party, one of the MAINLINE advertisers located in Exton, Pennsylvania, CBR mailed from Pennsylvania promotional free-of-charge copies of MAINLINE to the third party advertiser's mailing list. (Cantor Decl., ¶ 11.) After receiving the Verified Complaint in this matter, CBR checked all of the mailing lists it used in connection with the launch of the magazine, and determined that the third party mailing list supplied by the advertiser contained approximately fifteen (15) addresses in Delaware. (*Id.*) Therefore, out of approximately 70,000 copies of MAINLINE distributed free-of-charge, approximately 15 copies were mailed from Pennsylvania to addresses in Delaware supplied by a third party, equaling .0002% of the total printed. (*Id.*) No responses have been received from Delaware. (*Id.*)

CBR has a website on which the MAINLINE publication appears. (Cantor Decl., ¶ 19.) The website does not target residents of Delaware in any way. (*Id.*)

On February 16, 2007, Plaintiff filed its Verified Complaint and Motion for a Temporary Restraining Order. Subsequently, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), Defendant filed this Motion to Dismiss for Lack of Jurisdiction and Improper Venue.

## II.     ARGUMENT

### A.     Legal Standard

This is a motion to dismiss due to lack of jurisdiction under Fed. R. Civ. P. 12(b)(2), and improper venue under Fed. R. Civ. P. 12(b)(3).

The plaintiff has the burden of showing the existence of personal jurisdiction, and of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Sears, Roebuck & Co., v. Sears plc ("Sears II")*, 744 F. Supp. 1297, 1301 (D. Del. 1990); *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987).

To meet this burden, the plaintiff must establish either that the particular cause of action arose from the defendant's activities within the forum state ("specific jurisdiction") or that the defendant has "continuous and systematic" contacts with the forum state ("general jurisdiction"). *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984) The plaintiff must demonstrate that the defendant "voluntarily sought the benefits and protections of the laws of this State." *Sears, Roebuck & Co., v. Sears plc ("Sears I")*, 744 F. Supp. 1289, 1293 (D. Del. 1990).

The facts alleged must satisfy two requirements, one statutory and one constitutional under the Due Process Clause. *See Reach & Assoc., P.C. v. Dencer*, 269 F.Supp.2d 497, 502 (D. Del. 2003). With regard to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the Delaware long arm statute, 10 *Del. C.* § 3104(c).

### 1. The Delaware Statute

The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply service or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.
>
> 10 *Del. C.* § 3104(c).

Pursuant to subsection (c)(1)-(3) and (5)-(6), specific jurisdiction may be established if the cause of action arises from contacts with the forum. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1466 (D.Del.1991), citing *Sears, Roebuck & Co. v. Sears plc (Sears I)*, 744 F.Supp. 1289, 1292 (D.Del.1990); and *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.1986). Subsection (c)(4) provides for general jurisdiction, which requires a greater extent of contacts amounting to a "persistent course of conduct in the State," but which provides jurisdiction even when the claim is unrelated to the forum contacts. *Id.*

*De minimis* contacts in the form of isolated contacts with the forum state do not create jurisdiction. *Applied Biosystems,* 772 F. Supp. at 1467. Sales and marketing activities, including shipment of free samples into Delaware, targeting of Delaware by agents and representatives, and even isolated sales, do not qualify as transacting business in Delaware under § 3104(c)(1) unless they are part of a general business plan aimed at the forum. *Id.* at 1468; *Intel Corp. v.*

*Silicon Storage Technology, Inc.*, 20 F. Supp. 2d 690, 695-697 (D. Del. 1998). Even if advertisements are offers to sell, they do not rise to the level of transacting business in Delaware under § 3104(c)(1). *Id.* The mere ability to respond to potential customer orders and inquiries does not constitute a regular course of conduct in the forum. *Id.* at 699.

Similarly, in order for advertising to rise to the level of "transacting business" under Subsection 3104(c)(1), it must be specifically directed toward Delaware residents, *Sears, Roebuck & Co. v. Sears plc (Sears I)*, 744 F. Supp. 1289, 1294 (D. Del. 1990). Promotions must instead be part of a "sustained promotional campaign" and purposeful affilation with the forum state. *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 300 (3d Cir. 1985).

The mailing of promotional materials to Delaware is insufficient to confer jurisdiction. *Sears I*, 744 F.Supp. at 1294. Crucially, "the act of mailing promotional material to Delaware from outside the state is completed with the act of mailing, and does not occur in Delaware." *Applied Biosystems, Inc.* 772 F. Supp. at 1468, citing *Sears I*, 744 F. Supp. at 1294. The mere shipment of goods into Delaware does not constitute transacting business within the meaning of subsection (c)(1) of the statute, and does not rise to the level of business activity in the state. *Id.* In short, it is clear that Defendant has not transacted business or contracted to supply things in Delaware.

### 2. The Due Process Clause

Even where the statutory requirements of the forum state may be met, courts must assess whether the exercise of jurisdiction would satisfy the Due Process Clause, which limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant unless there are "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

**B.     There Are No Facts To Establish Specific Jurisdiction Over CBR Under The Delaware Long-Arm Statute.**

The sole unsupported jurisdictional allegation made by Plaintiff in its Verified Complaint is that "[v]enue is proper in this district pursuant to 28 U.S.C. § § 1391(b) and 1391(d) because Defendant regularly conducts business in this district." (Pl.'s Mot. at ¶ 6). For the reasons explained below, the woefully inadequate allegation that CBR "conducts business" in Delaware fails to meet the legal standard and burden required of the plaintiff to establish jurisdiction under the Delaware long arm statute.

**1.     Subsection 3104(c)(1)**

Under Subsection 3104(c)(1), jurisdiction exists if CBR has transacted business in the state. The Declaration of Andrew Cantor, however, demonstrates that CBR has no business connection with Delaware whatsoever. The most that can be said is that 15 of 70,000 magazines were mailed to Delaware via the use of a third party mailing list. Under every precedent, such *de minimis* contacts do not create jurisdiction. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1468 (D. Del. 1991); *Intel Corp. v. Silicon Storage Technology, Inc.,* 20 F. Supp. 2d 690, 695-697 (D. Del. 1998); *Sears, Roebuck & Co. v. Sears plc (Sears I),* 744 F. Supp. 1289, 1294 (D.Del.1990). Additionally, "the act of mailing promotional material to Delaware from outside the state is completed with the act of mailing, and does not occur in Delaware." *Applied Biosystems, Inc.* 772 F. Supp. at 1468, citing *Sears I,* 744 F. Supp. at 1294.

Such isolated incidents were not part of a business model that aimed at Delaware. To the contrary, the miniscule number of free-of-charge magazines that inadvertantly found their way to Delaware, mailed from Pennsylvania, demonstrate the utter lack of any "sustained promotional campaign" directed at Delaware. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1467 (D. Del. 1991).

Under Subsection 3104(c)(1), plaintiff's allegations utterly fail to meet the burden of asserting facts sufficient to create jurisdiction. Additionally, the facts in the Declaration of Andrew Cantor conclusively demonstrate the lack of jurisdiction in this case.

### 2.  Subsection 3104(c)(2)

Under Subsection 3104(c), jurisdiction will exist where the defendant has engaged in contracts to supply service or things in the State. Here, CBR has no subscribers, advertisers, or business dealings in Delaware, and jurisdiction does not exist on that basis. (Cantor Decl., ¶18.)

### 3.  Subsection 3104(c)(3)

Under Subsection 3104(c)(3) jurisdiction may be obtained where a nonresident has caused tortious injury in Delaware by an act or omission that occurred <u>in the State</u>. *Applied Biosystems* at 1467. Although the complaint arguably alleges tortious injury under trademark and other laws, the issue for the purposes of jurisdiction is whether any act or omission by CBR actually occurred in Delaware.

The record shows no act or omission by CBR in Delaware whatsoever. Even with regard to the *de minimis* 15 free-of-charge magazines mailed from Pennsylvania, no act or omission occurred in Delaware, because "in order for a defendant to commit an act in Delaware and be subject to subsection (c)(3), the defendant, or an agent of the defendant, must be present in

Delaware when the deed is done." *Applied Biosystems*, 772 F. Supp. at 1468. Under this subsection, there is no basis for jurisdiction.

### 4.     Subsections 3104(c)5 and 3104(c)(6)

Subsection 5 addresses ownership of real property in the state, however CBR does not own any property in Delaware. (Cantor Decl., ¶ 16.) Subsection 6 addresses acting as a surety in the State, which is inapplicable here.

### C.     There Are No Facts To Establish General Jurisdiction Over CBR Under The Delaware Long-Arm Statute.

Subsection 3104(c)(4) encompasses general jurisdiction, which requires that the plaintiff demonstrate that CBR has engaged in a "persistent course of conduct" in the State or derives substantial revenue from the State.

Here, the Declaration of Andrew Cantor establishes that CBR has no office or telephone number in Delaware; is not registered to do business in Delaware; has no representatives or agents in Delaware; owns no property in Delaware; has no bank accounts in Delaware; has no subscribers in Delaware; and has no advertisers in Delaware. (Cantor Decl., ¶ ¶ 13 - 18.) Additionally, virtually all of the approximately 70,000 magazines printed by CBR were distributed in Pennsylvania. There are simply no facts that show any persistent conduct aimed at Delaware, and in fact the very nature of the MAINLINE magazine is to aim at the target market located in the main line suburbs of Philadelphia, Pennsylvania. There is no basis for general jurisdiction.

### D.     Constitutional Due Process Does Not Allow For Jurisdiction Over CBR.

CBR has never "purposely availed" itself of the laws of Delaware, and has no "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984). There is no evidence that CBR "voluntarily sought the benefits and protections of the laws of this State." *Sears, Roebuck & Co., v. Sears plc (Sears I)*, 744 F. Supp. 1289, 1293 (D. Del. 1990). Therefore, the exercise of jurisdiction in this case does not meet the standards of the Delaware long arm statute, and does not comport with the Due Process Clause of the Constitution. Defendant's motion to dismiss should be granted.

## III. CONCLUSION

The facts demonstrate conclusively that CBR has not transacted business in Delaware, aimed its activities at Delaware, or purposely availed itself of Delaware law in any respect. Based on the Delaware long arm statute, and the Constitutional Due Process analysis, Defendant's Motion to dismiss for lack of jurisdiction and for improper venue must be granted.

Dated: February 23, 2007
Wilmington, Delaware

By:/s/ William M. Kelleher
William M. Kelleher, Esq. (No. 3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801-3034
Phone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: kelleherw@ballardspahr.com

Counsel for the Defendant, CBR Media

Of counsel:

Roberta Jacobs-Meadway
Bernadine J. Munley
Corey Field
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: (215) 665-8500
Facsimile: (215) 864-9120
E-mail: jacobsmeadwayr@ballardspahr.com
munleyb@ballardspahr.com
fieldc@ballardspahr.com

# Exhibit A

Case 1:07-cv-00087-JJF   Document 10-2   Filed 02/23/2007   Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TODAY MEDIA, INC.    :
:
Plaintiff,    :
:
v.    :    Civil Action No.:07-cv-00087
:
CBR MEDIA LLC    :    JURY TRIAL DEMANDED
:
Defendant.    :

## DECLARATION OF ANDREW CANTOR

Andrew Cantor declares:

1. I am an adult citizen of the United States and reside in the Commonwealth of Pennsylvania.

2. I am a principal in CBR Media, LLC, a Pennsylvania entity and the defendant in this action, located at 143 Bala Avenue, Bala Cynwyd, Pennsylvania 19004 ("CBR").

3. I am also the President of Cantor Design, Inc., a New York corporation located in New Hope, Pennsylvania.

4. I am an award winning Designer and Art Director. I was an Executive Board Member of the Association of Professional Design Firms (APDF); a member of the Art Director's Club of New York, AIGA (the American Institute of Graphic Arts) of NY, and the Society of Publication Designers.

5. I have read the Verified Complaint and Plaintiff Today Media, Inc.'s Motion for Temporary Restraining Order in this matter.

6. The other principals in CBR Media, LLC are John Ruttenberg and Eric Berger. Neither I nor any of the other principals of CBR reside in Delaware or own property in Delaware.

DMEAST #9729892 v2

7. CBR launched MAINLINE magazine with the intent to focus on and target the geographic market represented by the geographic community known as the "main line," located in the western main line suburbs of Philadelphia, Pennsylvania, and more particularly the northern main line suburbs.

8. The MAINLINE magazine is part of a multi-media plan for development of the MAINLINE brand. The company is working to create events and media relationships in order to further the MAINLINE brand, aimed at our geographic target market located in the main line suburbs of Philadelphia, Pennsylvania.

9. The premiere Volume 1, Number 1 issue of MAINLINE magazine was the January/February, 2007 issue, which was distributed in December, 2006. The second issue, dated March/April, 2007, was distributed in February, 2007.

10. For each of the first two issues, the print run was approximately 35,000 copies, virtually all of which were either mailed free of charge from Pennsylvania to addresses in Pennsylvania, or distributed free of charge to locations in Pennsylvania. In total, approximately 70,000 copies have been distributed in Pennsylvania, based on mailing lists for our target geograhic, the main line suburbs of Philadelphia, Pennsylvania.

11. At the request of one of our advertisers located in Exton, Pennsylvania, we mailed promotional copies of the magazine to the third party advertiser's mailing list. After receiving the Verified Complaint in this action, we determined that this list of third party addresses included approximately fifteen (15) addresses in Delaware.

12. To my knowledge, out of approximately 70,000 copies distributed, approximately 15 free-of-charge copies were mailed from Pennsylvania to addresses in Delaware supplied by a third party. No responses were received from Delaware.

13. CBR has no office or telephone number in Delaware.

14. CBR is not registered to do business in Delaware.

15. CBR has no representatives or agents in Delaware.

16. CBR owns no property in Delaware.

17. CBR has no bank accounts in Delaware.

18. CBR has no subscribers to MAINLINE magazine in Delaware and no advertisers in Delaware.

19. CBR has a website on which the MAINLINE publication appears. The website does not in any way target residents in Delaware.

I declare under penalty of perjury that the foregoing is true and correct.

Andrew Cantor

Date: February 23, 2007